IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

| | | |
|---|---|---|
| TERESA ANN BALDWIN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV 117-019 |
| | ) | |
| NANCY A. BERRYHILL, Acting | ) | |
| Commissioner of Social Security | ) | |
| Administration, | ) | |
| | ) | |
| Defendant. | ) | |

_____

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**
_____

Teresa Ann Baldwin appeals the decision of the Acting Commissioner of Social Security denying her application for Supplemental Security Income ("SSI") under the Social Security Act. Upon consideration of the briefs submitted by both parties, the record evidence, and the relevant statutory and case law, the Court **REPORTS** and **RECOMMENDS** the Commissioner's final decision be **AFFIRMED**, this civil action be **CLOSED**, and a final judgment be **ENTERED** in favor of the Commissioner.

**I. BACKGROUND**

Plaintiff applied for SSI on July 8, 2013, alleging a disability onset date of January 3, 2012.[1] Tr. ("R."), pp. 20, 261-70. Plaintiff was forty-three years old at her alleged disability onset date and was forty-six years old at the time the Administrative Law Judge ("ALJ") issued the decision currently under consideration. R. 31, 45, 261.

---

[1] Although Plaintiff listed January 3, 2012 as the alleged disability date, SSI is not payable prior to the month following the month in which the application was filed. 20 C.F.R. § 416.335.

Plaintiff applied for benefits based on allegations of anxiety NOS, mood disorder NOS, dissociative identity, panic disorder, and rule out schizoaffective disorder. R. 301. Plaintiff completed a GED. R. 45. Prior to her alleged disability, Plaintiff's only work history consisted of working one month at a bait shop. R. 308-15.

The Social Security Administration denied Plaintiff's application initially, R. 68-79, and on reconsideration, R. 80-92. Plaintiff requested a hearing before an ALJ, R. 133-35, and the ALJ held a hearing on March 4, 2015 and a supplemental hearing on August 31, 2015. R. 38-67. The ALJ heard testimony from Plaintiff, who appeared with counsel, as well as from Joseph Atkinson, a Vocational Expert ("VE"). Id. On September 4, 2015, the ALJ issued an unfavorable decision. R. 20-31.

Applying the sequential process required by 20 C.F.R. § 416.920, the ALJ found:

1. The claimant has not engaged in substantial gainful activity since July 8, 2013, the application date (20 C.F.R. § 416.971 *et seq.*).

2. The claimant has the following severe impairments: degenerative disc disease of the lumbosacral spine and a mental impairment (variously characterized) (20 C.F.R. § 416.920(c)).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 416.920(d), 416.925, and 416.926).

4. The claimant has the residual functional capacity ("RFC") to lift, carry, push, and/or pull 20 pounds occasionally and 10 pounds frequently; occasional stooping, twisting, and crouching; and sitting, standing, and/or walking for six hours each in an eight-hour workday. She retains the ability to understand and follow simple instructions and directions; perform simple tasks with supervision and independently; maintain attention/concentration for simple tasks; regularly attend to a routine and maintain a schedule; and can relate to and interact with others to the extent necessary to carry out simple tasks but should avoid work requiring more complex interaction or joint efforts to achieve work goals. She should not have interaction with the public. She can handle reasonable levels of simple work-related stress in that she can make simple decisions directly

>   related to the completion of her tasks and work in a stable, unchanging work environment. The claimant has no past relevant work (20 C.F.R. § 416.965).
>
> 5. Considering the claimant's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that the claimant can perform, including office helper, mail clerk, and small products assembler (20 C.F.R. §§ 416.969, and 416.969(a)). Therefore, the claimant was not under a disability, as defined in the Social Security Act, since July 8, 2013, the date the application was filed (20 C.F.R. § 416.920(g)).

R. 23-30.

When the Appeals Council denied Plaintiff's request for review, R. 1-6, the Commissioner's decision became "final" for the purpose of judicial review. 42 U.S.C. § 405(g). Plaintiff then filed this civil action requesting reversal or remand of that adverse decision.

## II. STANDARD OF REVIEW

Judicial review of social security cases is narrow and limited to the following questions: (1) whether the Commissioner's findings are supported by substantial evidence, and (2) whether the Commissioner applied the correct legal standards. Lewis v. Callahan, 125 F.3d 1436, 1439 (11th Cir. 1997). When considering whether the Commissioner's decision is supported by substantial evidence, the reviewing court may not decide the facts anew, reweigh the evidence, or substitute its judgment for the Commissioner's. Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005); Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991). Notwithstanding this measure of deference, the Court remains obligated to scrutinize the whole record to determine whether substantial evidence supports each essential administrative finding. Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983).

The Commissioner's factual findings should be affirmed if there is substantial evidence to support them. Barron v. Sullivan, 924 F.2d 227, 230 (11th Cir. 1991). Substantial evidence is

"more than a scintilla, but less than a preponderance: '[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion.'" Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990) (quoting Bloodsworth, 703 F.2d at 1239). If the Court finds substantial evidence exists to support the Commissioner's factual findings, it must uphold the Commissioner even if the evidence preponderates in favor of the claimant. Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158-59 (11th Cir. 2004). Finally, the Commissioner's findings of fact must be grounded in the entire record; a decision that focuses on one aspect of the evidence and disregards other contrary evidence is not based upon substantial evidence. McCruter v. Bowen, 791 F.2d 1544, 1548 (11th Cir. 1986).

The deference accorded the Commissioner's findings of fact does not extend to her conclusions of law, which enjoy no presumption of validity. Brown v. Sullivan, 921 F.2d 1233, 1236 (11th Cir. 1991) (holding judicial review of Commissioner's legal conclusions are not subject to substantial evidence standard). If the Commissioner fails either to apply correct legal standards or to provide the reviewing court with the means to determine whether correct legal standards were in fact applied, the Court must reverse the decision. Wiggins v. Schweiker, 679 F.2d 1387, 1389 (11th Cir. 1982).

## III. DISCUSSION

Plaintiff argues the ALJ (1) improperly cherry-picked through Plaintiff's treating psychiatrist's findings to support non-disability and (2) failed to incorporate all of Plaintiff's mental limitations into her RFC. (Doc. no. 14 (hereinafter "Pl.'s Br."), pp. 12-19.) As explained below, the ALJ gave appropriate weight to Dr. Gregory Max's opinions and findings. In addition, the ALJ considered all of Plaintiff's mental limitations when formulating her RFC. Therefore, none of Plaintiff's arguments form a valid basis for reversal or remand.

4

### A. Step Four Framework for Formulating Plaintiff's RFC

At step four of the sequential process, the ALJ evaluates a claimant's RFC and ability to return to past relevant work. 20 C.F.R. § 416.920(e). RFC is defined in the regulations "as that which an individual is still able to do despite the limitations caused by his or her impairments." Phillips v. Barnhart, 357 F.3d 1232, 1238 (11th Cir. 2004) (citation omitted). Courts have described RFC as "a medical assessment of what the claimant can do in a work setting despite any mental, physical or environmental limitations caused by the claimant's impairments and related symptoms." Watkins v. Comm'r of Soc. Sec., 457 F. App'x 868, 870 n.5 (11th Cir. 2012).

Limitations are divided into three categories: (1) exertional limitations that impact the ability to perform the strength demands of a job, i.e., sitting, standing, walking, lifting, carrying, pushing or pulling; (2) non-exertional limitations that impact the ability to meet non-strength job demands, i.e., tolerating dust and fumes, appropriately responding to supervision, co-workers and work pressure, and difficulty performing manipulative or postural functions of jobs; and (3) a combination of exertional and non-exertional limitations. Baker v. Comm'r of Soc. Sec., 384 F. App'x 893, 894 (11th Cir. 2010) (citing 20 C.F.R. § 404.1569a(b)-(d)). When determining whether a claimant can return to his past relevant work, the ALJ must consider "all the relevant medical and other evidence." Phillips, 357 F.3d at 1238.

Here, the ALJ determined Plaintiff has the ability to perform the following:

> [L]ift, carry, push, and/or pull 20 pounds occasionally and 10 pounds frequently; occasional stooping, twisting, and crouching; and sitting, standing, and/or walking for six hours each in an eight-hour workday. She retains the ability to understand and follow simple instructions and directions; perform simple tasks with supervision and independently; maintain attention/concentration for simple tasks; regularly attend to a routine and maintain a schedule; and can relate to and interact with others to the extent necessary to carry out simple tasks but should avoid work requiring more complex interaction or joint efforts to achieve work

5

goals. She should not have interaction with the public. She can handle reasonable levels of simple work-related stress in that she can make simple decisions directly related to the completion of her tasks and work in a stable, unchanging work environment.

R. 25. The ALJ further determined Plaintiff had no past relevant work, but at step five, after consultation with a VE, determined that considering the claimant's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that the claimant can perform, including office helper, mail clerk, and small products assembler. R. 29.

### B. The ALJ Properly Weighed the Medical Opinions.

Plaintiff contends the ALJ improperly cherry-picked the medical opinions of Dr. Gregory Max, Plaintiff's treating psychiatrist, to support her finding of non-disability. As discussed herein, the ALJ correctly assigned Dr. Max's opinion great weight while discounting those portions of his findings inconsistent with the medical record.

#### 1. Standard for Evaluating Medical Opinions

In the Eleventh Circuit, a treating physician's opinion must be given substantial weight. Hillsman v. Bowen, 804 F.2d 1179, 1181 (11th Cir. 1986). Refusal to give a treating physician's opinion substantial weight requires the Commissioner show good cause. Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1159 (11th Cir. 2004); Schnorr v. Bowen, 816 F.2d 578, 581 (11th Cir. 1987). "The [Commissioner] must specify what weight is given to a treating physician's opinion and any reason for giving it no weight, and failure to do so is reversible error." MacGregor v. Bowen, 786 F.2d 1050, 1053 (11th Cir. 1986).

The Commissioner, however, is not obligated to agree with a medical opinion if the evidence tends toward a contrary conclusion. Sryock v. Heckler, 764 F.2d 834, 835 (11th Cir. 1985). Indeed, a treating physician's opinion may be properly discounted if it is unsupported by

objective medical evidence, is merely conclusory, or is inconsistent with the physician's medical records. Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997); see also Crawford, 363 F.3d at 1159 (affirming ALJ's rejection of treating physician's opinion when such opinion conflicted with the doctor's treatment notes, was unsupported by the medical evidence, and was based primarily on claimant's subjective complaints); Phillips v. Barnhart, 357 F.3d 1232, 1241 (11th Cir. 2004) (affirming ALJ's rejection of treating physician's opinion when such opinion conflicted with the doctor's treatment notes and claimant's testimony regarding daily activities).

When considering how much weight to give a medical opinion, the ALJ must consider a number of factors:

> (1) whether the doctor has examined the claimant; (2) the length, nature and extent of a treating doctor's relationship with the claimant; (3) the medical evidence and explanation supporting the doctor's opinion; (4) how consistent the doctor's "opinion is with the record as a whole"; and (5) the doctor's specialization.

Forsyth v. Comm'r of Soc. Sec., 503 F. App'x 892, 893 (11th Cir. 2013) (citing 20 C.F.R. §§ 404.1527(c), 416.927(c)). Sources that can provide evidence to establish an impairment include licensed physicians, but not physician's assistants. See Farnsworth v. Soc. Sec. Admin., 636 F. App'x 776, 783-84 (11th Cir. 2016); 20 C.F.R. § 416.913(a)(1).

Additionally, the Commissioner's regulations require the opinions of examining physicians be given more weight than non-examining physicians, the opinions of treating physicians be given more weight than non-treating physicians, and the opinions of specialists (on issues within their areas of expertise) be given more weight than non-specialists. See 20 C.F.R. § 404.1527(c)(1)-(2), (5). However, SSR 96-6p provides that findings of fact made by state agency medical consultants regarding the nature and severity of an individual's impairments must be treated as expert opinion evidence of a non-examining source at the ALJ and AC levels

7

of administrative review. SSR 96-6p, 1996 WL 374180, at *1 (July 2, 1996). Moreover, state agency medical consultants' opinions may be entitled to greater weight than the opinions of treating or examining sources if they are supported by evidence in the record. See id.; Jarett v. Comm'r of Soc. Sec., 422 F. App'x 869, 872-74 (11th Cir. 2011) (holding ALJ properly gave more weight to non-examining state consultants' opinions over treating physician's opinion); see also 20 C.F.R. § 404.1527(e)(2)(i), (iii).

Lastly, under SSR 96-5p, the determination of disability regarding a Social Security claim is reserved to the Commissioner, and treating and other medical source opinions on issues reserved to the Commissioner are never entitled to controlling weight or special significance. SSR 96-5p, 1996 WL 374183, at *1, 2 (July 2, 1996); see also 20 C.F.R. § 404.1527(d).

### 2. The ALJ Properly Weighed Dr. Max's Medical Opinion.

Plaintiff claims the ALJ erred by "cherry-picking through Dr. Max's findings to support non-disability." Pl.'s Br., p. 13. The ALJ assigned Dr. Max "great weight . . . because he is a treating specialist, and his assessment supports the conclusion that none of the claimant's mental functioning is precluded." R. 27. However, the ALJ rejected Dr. Max's opinions that Plaintiff would be off-task more than twenty percent of the workday and would be absent from work three days per month. (Id.)

Substantial evidence supports the ALJ's decision to reject Dr. Max's two opinions. First, the ALJ noted Dr. Max's opinion "was based in part on the claimant's lower back disorder, which is beyond the scope of the treatment he provided the claimant." (Id.) Plaintiff argues as an M.D., Dr. Max is competent to identify back pain and its corresponding limitations. (Pl.'s Br., p. 15.) However, as the ALJ noted, Dr. Max is a psychiatrist associated with Oswego Hospital Behavioral Services Division, and his treatment, as reflected by his treatment notes,

8

focused on Plaintiff's mental condition. R. 495-99, 544-46. A doctor's specialty is one of the factors the ALJ can consider in assessing the weight assigned to an opinion. See 20 C.F.R. § 416.927(c)(5); see also Huntley v. Soc. Sec. Admin., Comm'r, 683 F. App'x 830, 832 (11th Cir. 2017) ("When assessing medical opinions, the administrative law judge must consider . . . the physician's specialty."). Thus, the ALJ properly considered Dr. Max's psychiatric specialty when discounting his opinion regarding Plaintiff's back impairment.

Plaintiff further argues Dr. Max's opinion regarding Plaintiff's back was corroborated by Plaintiff's treating physician, Dr. Marie Desravines, and physician's assistant ("PA"), Samantha Sheggrud. Pl.'s Br., p. 15. However, the ALJ only accepted PA Sheggrud's and Dr. Desravines' opinion "to the extent she [Plaintiff] is limited to occasional stooping, twisting, and crouching" because only minimal abnormalities were identified in diagnostic images of Plaintiff's lumbar spine and PA Sheggrud noted Plaintiff put forth poor effort during physical exams. R. 26.

Indeed, at Plaintiff's first visit with PA Sheggrud in April 2014, Plaintiff reported no physical disabilities and normal activities of daily living. R. 469. On examination, Plaintiff had some tenderness in her lumbosacral spine, but no spasms and negative straight leg raises on both sides. (Id.) Moreover, as PA Sheggrud detailed in her treatment notes during an October 2014 visit, Plaintiff's October 2014 lumbar spine MRI showed only a small tear at L4-L5 and a small protrusion at L5-S1 causing only moderate lateral recess stenosis. R. 429, 478-79. At that same visit, PA Sheggrud observed Plaintiff could barely walk, but had no trouble getting on the exam table. R. 443. During an exam in November 2014, Plaintiff reported she exercises lightly three times a week, and PA Sheggrud noted Plaintiff had no physical disabilities and her daily living activities were normal. R. 437, 442, 468. One month later in December 2014, PA Sheggrud observed Plaintiff had some tenderness on her lumbar spine and a positive straight leg raise on

the left, but no spasms and a negative straight leg raise on the right. R. 432. She further observed Plaintiff had decreased response to stimulation on her lower extremities and an inability to stand on her toes or heels, but was in no acute distress. R. 432. Evidence from other orthopedics providers also does not support Plaintiff's back pain causing her to be off-task or miss work. R. 547-48, 550-53. Thus, the underlying evidence shows the opinion that Plaintiff's back pain limits her ability to remain on task or regularly attend work, whether opined by PA Sheggrud or Dr. Max, are not supported in the record.

The ALJ also rejected Dr. Max's opinions because "[w]hile Dr. Max noted that the claimant experienced auditory hallucinations, counseling records do not reflect such abnormal clinical findings. Instead, Dr. Max indicated that the claimant had no evidence of hallucinations in January 2015." R. 27. Plaintiff argues the record is replete with medical evidence that Plaintiff experiences hallucinations. Pl.'s Br., p. 16. However, as the ALJ noted, Dr. Max's own treatment notes undermine Dr. Max's opinion that hallucinations interfered with Plaintiff's ability to work. R. 495-96, 498.

In December 2014, Dr. Max noted Plaintiff's report of occasional auditory hallucinations, but no command auditory hallucinations. R. 496. While there are some indications in the record Plaintiff has had auditory hallucinations, R. 483, 485, 491, 493, 537, 539, notes from other mental health counselors and doctors at the Oswego Hospital Behavioral Services Division also indicate no hallucinations in the months prior to and after Dr. Max's opinion. R. 501, 503, 506, 508, 511, 512, 514, 517, 518, 520. Thus, there is substantial evidence supporting the ALJ's decision to discount Dr. Max's opinions regarding Plaintiff's hallucinations. See Ellison v. Barnhart, 355 F.3d 1272, 1275 (11th Cir. 2003) ("Even if the evidence preponderates against the Commissioner's findings, the court must affirm if the decision reached is supported by

substantial evidence.") (citation omitted).

Accordingly, the ALJ decision to give little weight to the Dr. Max's opinions that Plaintiff would be off-task more than twenty percent of the workday and would be absent from work three days per month was supported by substantial evidence. In addition, the ALJ cited many mental treatment records to support with substantial evidence his overall conclusion that "the objective evidence in record undermines Dr. Max's conclusion that the claimant would experience significant off-task behavior and unscheduled absences." R. 28.

### C. The ALJ Properly Considered All Impairments in Formulating Plaintiff's RFC.

Plaintiff contends the ALJ erred by not specifically identifying each mental impairment diagnosed at step two of the sequential evaluation and failing to incorporate the corresponding limitations into Plaintiff's RFC. Pl.'s Br., pp. 17-18. However, as the ALJ noted, "[W]hat [a mental] impairment is called is of no real consequence; rather how a given impairment affects mental functioning is the central inquiry under the Act." R. 23; see 20 C.F.R. §416.920a (focusing on "degree of functional limitation" in evaluating mental impairments). Throughout her discussion of the evidence, the ALJ identified Plaintiff's various diagnoses related to Plaintiff's mental condition and properly considered all of the opinions and treatment notes supporting the functional limitations included in the RFC. R. 23-29. Thus, the ALJ did not err in failing to separately evaluate each mental impairment diagnosis at step two in order to formulate Plaintiff's RFC.

Plaintiff further contends the ALJ should have included more limitations in her RFC formulation from the opinions of Dr. Max and non-examining state agency psychologist Dr. Mercedes DeCubas. Pl.'s Br., pp. 18-19. The ALJ fully considered Dr. Max's mental impairment opinions, as discussed in detail *supra*, and incorporated those limitations into the

11

RFC. R. 26-27.  Furthermore, although the ALJ gave some weight to Dr. DeCubas' opinion, R. 26, she was not required to adopt all of Dr. DeCubas' findings.  See Forsyth, 503 F. App'x at 893 (detailing factors ALJ must consider in weighing medical opinions).  Moreover, although Dr. DeCubas responded Plaintiff would be "moderately limited" to the question regarding Plaintiff's ability to complete a normal workday and workweek without interruptions, when asked to explain in narrative form Plaintiff's concentration and persistence limitations, Dr. DeCubas opined Plaintiff "is able to carry out simple instructions.  She can follow a schedule and can sustain goal-directed activity in a routine setting." R. 74-75.  The ALJ incorporated these limitations into the RFC.  R. 25-26.

Finally, Plaintiff contends the ALJ should have explicitly included the moderate limitations in concentration, persistence, and pace she found at step two of the sequential evaluation process in the RFC and subsequent hypothetical question to the VE.  Pl.'s Br., p. 19.  Plaintiff argues the ALJ's limitation to simple, routine tasks failed to adequately account for these moderate limitations.  Id.  However, Plaintiff fails to explain why this limitation does not take into account all of Plaintiff's struggles with concentration, persistence, and pace.  Indeed, the ALJ's RFC finding sufficiently accounted for Plaintiff's moderate limitations because the medical record supports the ALJ's assessment of Plaintiff's mental limitations.  R. 25-29; see, e.g., Ybarra v. Comm'r of Soc. Sec., 658 F. App'x 538, 542 (11th Cir. 2016) (holding limitation to "short, simple instructions . . . with only occasional contact with co-workers and the general public on routine matters" accounted for moderate limitations in ability to maintain concentration, pace, and persistence); Carpenter v. Comm'r of Soc. Sec., 614 F. App'x 482, 490 (11th Cir. 2015) (holding limitation to "simple, unskilled, routine, and repetitive tasks" accounted for "at most moderate difficulties with regard to concentration, persistence, or

pace[]"); see also Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1180 (11th Cir. 2011) ("[W]hen medical evidence demonstrates that a claimant can engage in simple, routine tasks or unskilled work despite limitations in concentration, persistence, and pace, . . . limiting the hypothetical to include only unskilled work sufficiently accounts for such limitations.").

In sum, the ALJ properly found that Plaintiff's mental impairments were not disabling, and that determination was supported by substantial evidence.

## IV. CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** the Commissioner's final decision be **AFFIRMED**, this civil action be **CLOSED**, and a final judgment be **ENTERED** in favor of the Commissioner.

SO REPORTED and RECOMMENDED this 7th day of March, 2018, at Augusta, Georgia.

BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA